# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 12/22/2020 11:17 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<div style="float:right">

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

</div>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Mario Oswaldo Medina, Sr., Additional Parties Attachment Form is Attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

American Career College, Inc. a california corporation- Additional Parties Attachment Form Attache

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Stanley Mosk Court House - Central Divsion<br>111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):*<br>20STCV48985 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Keith Zakarin, Esq. /Meagan E. Garland, Esq. / Sarah A. Gilbert, Esq. - Duane Morris, LLP 750 B St., Ste 2900 San Diego, CA 92101

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | 12/22/2020 | Clerk, by Sherri R. Carter Executive Officer / Clerk of Court , Deputy<br>*(Secretario)* H. Flores-Hernandez *(Adjunto)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served



[SEAL]

1. [x] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [x] on behalf of *(specify)*: Unete Healthcare Associates. LLC d/b/a Pronto Wellness

   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
           [x] other *(specify)*: Limited Liability Company

4. [ ] by personal delivery on *(date)*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**    [ Print this form ]   [ Save this form ]      [ Clear this form ]

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| American Career College v. Medina | 20STCV48985 |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[x] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

West Coast University, Inc., a California Corporation.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]        [ Clear this form ]

**SUM-200(A)**

| SHORT TITLE:<br>American Career College v. Medina | CASE NUMBER:<br>20STCV48985 |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

a/k/a Mario Oswaldo Medina Ortiz, a/k/a Mario Oswaldo Ortiz, a/ka Mario M Ortiz, a/k/a Mario Oswaldo Medino a/k/a, Mario Ortiz Medina, an individual; Roger Adolfo Ortiz, a/k/a Roger Ortiz, a/k/a Roger Aofl Ortiz, Medina, an individual; Rolando Valdivia, a/k/a Raul Valdez; a/k/a Raul Val, an individual; Únete Healthcare Associates, L.L.C, doing business as Pronto Wellness, a California limited liability company, and DOES 1 -100, inclusive.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]

Electronically FILED by Superior Court of California, County of Los Angeles on 12/22/2020 Christopher Darling, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Rupert Byrdsong

1 Keith Zakarin, Esq. (SBN 126528)
Meagan E. Garland, Esq. (SBN 246735)
2 Sarah A. Gilbert, Esq. (SBN 312865)
**DUANE MORRIS LLP**
3 750 B Street, Suite 2900
San Diego, CA 92101
4 Telephone: 619.744.2200
Facsimile: 619.744.2201
5 E-mail: KZakarin@duanemorris.com
          MEGarland@duanemorris.com
6          SAGilbert@duanemorris.com

7 Attorney for Plaintiffs,
AMERICAN CAREER COLLEGE, INC.
8 WEST COAST UNIVERSITY, INC.

9                **SUPERIOR COURT OF CALIFORNIA**

10               **COUNTY OF LOS ANGELES**

11

12 American Career College, Inc., a          Case No.   20STCV48985
California corporation, and West Coast
13 University, Inc., a California corporation  **COMPLAINT FOR:**
                      Plaintiffs,
14                                            (1)   VIOLATION OF THE COMPUTER
15            v.                                    DATA ACCESS AND FRAUD ACT
                                                   (PEN. CODE, § 502)
16 Mario Oswaldo Medina, Sr. a/k/a Mario
Oswaldo Medina Ortiz, a/k/a Mario            (2)   VIOLATION OF THE RACKETEER
17 Oswaldo Ortiz, a/ka Mario M Ortiz, a/k/a         INFLUENCED AND CORRUPT
Mario Oswaldo Medino a/k/a, Mario Ortiz            ORGANIZATIONS ACT ("RICO")
18 Medina, an individual; Roger Adolfo Ortiz,       (18 U.S.C.S, §§ 1961(5), 1962(b))
a/k/a Roger Ortiz, a/k/a Roger Aofl Ortiz,
19 Medina, an individual; Rolando Valdivia,   (3)   CONSPIRACY TO ENGAGE IN A
a/k/a Raul Valdez; a/k/a Raul Val, an              PATTERN OF RACKETEERING
20 individual; Unete Healthcare Associates,        PURSUANT TO RICO, 18 U.S.C.S §§
L.L.C, doing business as Pronto Wellness,          1961(5), 1962(d)
21 a California limited liability company, and
DOES 1 -100, inclusive.                      (4)   MISAPPROPRIATION OF TRADE
22                                                 SECRETS (CIVIL CODE, § 3426, *et seq.*)
                      Defendants.
23                                           (5)   THREATENED MISAPPROPRIATION
                                                   OF TRADE SECRETS (CIVIL CODE, §
24                                                 3426, *et seq.*)

25                                           (6)   TORTIOUS INTERFERENCE WITH
                                                   PROSPECTIVE ECONOMIC
26                                                 ADVANTAGE

27                                           (7)   FRAUD AND DECEIT –
                                                   INTENTIONAL
                                                   MISREPRESENTATION
28                                           (8)   FRAUD AND DECEIT—
                                                   CONCEALMENT

American Career College, Inc., a California corporation, and West Coast University, Inc., a California corporation (collectively, "Plaintiffs") aver against Mario Oswaldo Medina, Sr. a/k/a Mario Oswaldo Medina Ortiz, a/k/a Mario Oswaldo Ortiz, a/ka Mario M Ortiz, a/k/a Mario Oswaldo Medino a/k/a, Mario Ortiz Medina, an individual ("Medina"); Roger Adolfo Ortiz, a/k/a Roger Ortiz, a/k/a Roger Aofl Ortiz, Medina, an individual ("Ortiz"); Rolando Valdivia, a/k/a Raul Valdez, a/k/a/ Raul Val, an individual ("Valdivia"); Únete Healthcare Associates, L.L.C, doing business as Pronto Wellness, a California limited liability company ("Pronto"), (collectively, "Defendants") and DOES 1 -100, inclusive as follows:

**THE PARTIES**

1.     Plaintiff, American Career College, Inc. is a corporation arising and existing under the laws of the state of California, with its principal place of business at 151 Innovation Dr. Irvine, CA 92617.

2.     Plaintiff, West Coast University, Inc., is a corporation arising and existing under the laws of the state of California, with its principal place of business at 151 Innovation Dr. Irvine, California 92617.

3.     Plaintiffs are informed and believe, Defendant, Mario Oswaldo Medina, Sr., MBA, is an individual residing in Los Angeles, California.  Medina was an employee of Plaintiff, American Career College, serving in the role of Executive Director, Strategic Partnership; he worked at ACC's office in Los Angeles, California.

4.     Plaintiffs are informed and believe, Roger Adolfo Ortiz, is an individual residing in Los Angeles, County.  Plaintiffs are informed and believe, Roger Adolfo is the biological brother of Medina; moreover, Ortiz is the Chief Executive Officer at Únete Healthcare Associates, L.L.C.

5.     Plaintiffs are informed and believe, Rolando Valdivia is an individual residing in Orange County.  At all relevant times, Valdivia was an employee of Plaintiff, American Career College, serving in the role of Student Experience Manager, Clinical, and worked at ACC's office in Los Angeles, California.

6.     Plaintiffs are informed and believe, Únete Healthcare Associates, L.L.C. is a limited liability company organized and existing under the laws of the State of California, with its principal

place of business presently located in Los Angeles County, at 1130 Green Street, Suite 203, Pasadena, California. Plaintiffs are further informed and believe, Medina and Ortiz co-founded Únete and that Únete Healthcare Associates, L.L.C. is doing business as Pronto Wellness ("Pronto").

7. The true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave of court to amend this complaint to allege their true names when they ascertain same.

8. Plaintiffs are informed and believes, at all relevant times each of the defendants, including DOE defendants, was and is the agent, employee, employer, joint venture, representative, alter ego, joint-employer, subsidiary, and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint-venture or partnership authority and or is in some other way responsible for the acts of one or more of the defendants. Moreover, Plaintiffs are informed and believe each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining defendants.

## JURISDICTION

9. The Superior Court of California has concurrent subject-matter jurisdiction over claims arising under the federal Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 *st seq*., pursuant to the holdings in *Tafflin v. Levitt*, 493 U.S. 455 (1990) and *Lou v. Belzberg*, 834 F. 2d. 730 (9th Cir. 1987).

10. The Superior Court of California has original subject-matter jurisdiction over the remaining causes of action, all of which arise from California statutes or decisional authority.

11. The Superior Court of California has personal jurisdiction over each of the defendants because they reside, or do business, in the state.

<div align="center">

**VENUE**

</div>

12.     Venue is proper in Los Angeles County because Defendants Medina, Ortiz and Valdivia reside in, and Defendant, Pronto has its principle place of business in, Los Angeles County.

<div align="center">

**GENERAL ALLEGATIONS**

**THE BUSINESS OF AMERICAN CAREER COLLEGE AND WEST COAST UNIVERSITY**

</div>

*American Career College:*

13.     American Career College ("ACC") is a private, vocational college founded in 1978 as American College of Optics.  The college's name changed in 1992 with the expansion of its program offerings to include additional healthcare education programs.

14.     ACC offers diploma and associate-degree programs and operates across three campuses located in Los Angeles, Orange County and Ontario.  The College's program offerings span the health-care profession to include, Vocational Nursing, Nursing-Associates-Degree, Dental Assisting, Respiratory Therapy, Medical Billing and Coding, Pharmacy Technician and many others.

15.     ACC has a greater than 30% referral rate from its current and former students.

16.     ACC trains it students to succeed in competitive careers in the health-care profession, across disciplines.

*West Coast University*

17.     West Coast University ("WCU") is a private institution that focuses primarily on undergraduate-degree programs, including Registered-Nurse (RN), Bachelor-of-Science-in Nursing (BSN) and Licensed-Vocational-Nurse (LVN).     Additionally, WCU provides post-graduate degrees in the field of nursing, including Doctor of Nursing Practice.

18.     WCU and ACC are sister institutions.

19.     Since its founding, WCU has grown to include five campuses, in Orange County, Ontario, Miami, Los Angeles and Dallas.

20.     WCU has been a trailblazer in the field of nursing education; in 2008, it became the first school of its kind to offer a Bachelor of Science Degree in Registered Nursing.

21.     Over their decades in the field of nursing education since their founding, ACC and WCU, have honed a unique brand of instruction and have carefully cultivated meaningful and productive relationships with healthcare institutions throughout the state and across the country.

22.     Aside from its students, ACC's and WCU's relationships with the healthcare-institutions is the life's blood of their colleges.   In no case is this more apparent than ACC's Associate Degree in Nursing Program.

***The Clinical-Rotation Vetting, and Highly-Competitive Placement, Process***

23.     A critical component of the nursing curriculum is a requirement by the California Board of Registered Nursing that, "75% of [a nursing student's] clinical hours must be in direct patient care" and in a "board-approved" setting, pursuant to 16 California Code of Regulations ("CCR"), § 1426(g).)

24.     As a result of the 75%-direct-patient-care requirement and the staggering number of students seeking nursing degrees, competition for clinical rotations is incredibly competitive.   This fact has only been exacerbated by the onset of the global pandemic that closed various clinical programs and the subsequent program-completion delays for existing students.

25.     Students who are selected to participate in a highly-coveted clinical rotation sufficient to satisfy the 75% requirement may not begin their rotations until successfully completing a comprehensive clinical clearance process, which includes a criminal background check and other clinical-preparedness checks (substantive and administrative).

26.     Historically, healthcare institutions dedicate their own time and resources to the comprehensive vetting process, including liaising with the applicants' educational institutions, like Plaintiffs, to ensure applicants' competence and qualifications.   This poses a tremendous administrative strain on the healthcare institutions.

27.     An industry developed around providing clinical-management solutions to healthcare institutions to alleviate the administrative burdens attendant to the clinical-program applicant vetting process.   Neutral-third parties contracted with healthcare institutions to vet applicants according to each institution's policy specifications.

28.     As part of the arrangement with the third-party vendors, healthcare institutions instructed the educational institutions to liaise with the third parties directly, and at the educational institution's own expense.  As such, the third parties passed along the cost of their services to the educational institutions by billing them directly for theirs services.

**Defendants', Valdivia and Medina, Relationship of Trust with Plaintiffs**

*Valdivia*

29.     ACC employed Valdivia as its Student Experience Manager, Clinical from May 2018 through December 2020 when he resigned his employment.   As Student Experience Manager, Valdivia was directly responsible for managing the external component of the clinical-programs portion of the student experience.  He was responsible for identifying and acquiring new clinical relationships while supporting existing ones pertaining to nearly 2,000 students in clinical training.  Valdivia worked in a position of trust given his direct access to proprietary and confidential information relating to ACC's strategy to develop key relationships with the healthcare institutions who were decision makers for highly-sought-after clinical-program placements.

*Medina*

30.     Medina was an employee of ACC for nearly 9.5 years; he reported directly to Valdivia.  Like Valdivia, Medina served in a position of trust with the college as its Executive Director, Strategic Partnerships.   Central to Medina's role was cultivating and maintaining relationships with C-suite and Management personnel at various healthcare institutions across ACC's footprint.   Further, he was responsible for negotiating contracts for clinical-training opportunities as well as expanding ACC's partnerships with over 350 healthcare facilities.   In Medina's role he had direct, clear visibility into ACC's entire strategic plan around its clinical programs, as well as access to ACC's clinical-program partners.

**Plaintiffs' Relationship with Ortiz and Pronto**

31.     Pronto is a provider of clinical-management solutions to various healthcare institutions.

32.     On information and belief, Pronto provides its services to healthcare facilities not only in California, but also across state lines in other jurisdictions; moreover, Plaintiffs are

informed and believe Pronto uses electronic communication via email, as well as telephone and U.S. Mail to conduct its business within and without California.

33.     Plaintiffs are informed and believe Ortiz and Medina are co-founders of Pronto; moreover, they organized Pronto in August 2018.

34.     At all relevant times Plaintiffs were unaware, and Medina did not disclose, his personal relationship with Ortiz, the purported owner of Pronto.

35.     While Plaintiffs were generally aware of various third-party vendors that provided clinical-administration services, many of their health-care institution partners had not yet required Plaintiffs to work with any such vendors.  Furthermore, Plaintiffs had not heard of Pronto until in or around June 2019.

36.     Plaintiffs' first introduction to Pronto came through Medina himself.  In or around June 2019, Medina called ACC's Chief Academic Officer ("CAO") and informed her that several of ACC's clinical partners were now requiring their partner schools to use a third-party compliance partner in an effort to reduce the clinical partners' paperwork and staffing costs.

37.     In that same conversation, Medina identified Pronto as that third-party compliance partner with whom Plaintiffs' institutional partners had contracted to take on the clinical-program-clearance.  Medina lead the CAO to believe Pronto was run by a brilliant business woman, whom he identified as an Asian physician.

38.     In that context, Medina shared with the CAO his view that Pronto would be expanding to more partners quickly, as well as his recommendation that,  Plaintiffs got on board with Pronto, so as not to trail behind their competitors.

39.     In an arms-length fashion, still revealing no personal relationship between himself and Pronto or its co-founder, Medina asked ACC to consider absorbing the cost to build ACC's network of clinical providers.

40.     ACC agreed to Medina's recommendation based on his position of trust and his proximity to this sort of information given his role and because ACC did not want to lose the opportunity to contract with various healthcare-institutions for failure to sign up with these institutions' preferred third-party compliance partner.

41.     On or before July 25, 2019, Valdivia circulated within ACC a proposed contract from Pronto, which estimated a per-student cost of $49.00 and an estimated annual cost of $49,000.

42.     On or around August 1, 2019, ACC entered into a contact with Pronto.

43.     On or around August 6, 2019, Medina suggested WCU enter into an agreement with Pronto by way of amendment to the then-existing agreement between ACC and Pronto.  Based upon their relationship of trust, WCU agreed.

**Defendants Actively Concealed their Relationships with Pronto**

44.     Plaintiff is informed and believes Defendants took numerous measures to conceal from Plaintiffs their personal involvement with Pronto.  Plaintiff is informed and believes Valdivia adopted an alias, Raul Valdivia and Raul Val, iterations of his brother's name to conduct Pronto's business.  Specifically, Valdivia used his alias when conducting business *with* Plaintiff's over email, so as not to alert Plaintiffs to his identity.

45.     In some instances, for example, on or about June 19, 2020, Defendant Valdivia, posing as Raul Valdez, emailed his colleagues at ACC and others from his *raul@prontowellness.com* email address; Valdivia took the extra step of including his own ACC email, *rValdivia@americancareercollege.edu* to further conceal his identity.

46.     Plaintiffs are informed and believe Defendants Ortiz and Valdivia utilized separate cell phones – one for Plaintiffs' business and the other for Pronto's business.

47.     Plaintiffs are informed and believe that on several occasions Defendants Valdivia and Medina visited Plaintiffs' clinical partners under the guise of Plaintiffs' business, but instead used their access to Plaintiffs' relationship partners to conduct Pronto business.

48.     Plaintiffs are informed and believe on such occasions Defendants pitched Pronto's services to Plaintiffs' clinical partners; in some cases, Defendant Valdivia would visit the same institutional site in one day – once as Rolando (on behalf of Plaintiffs) and once as Raul (on behalf of Pronto.)  Plaintiffs are informed and believe that this practice caused at least one clinical partner to inquire whether Defendant Valdivia worked for ACC or Pronto.

49.     Plaintiffs are informed and believe that Defendants used their direct access in the case of Valdivia and Medina, and proximate access in the case of Ortiz, to Plaintiffs' trade-secret

and proprietary information to target Plaintiffs' clinical partners and create the demand for their services, while driving the costs Plaintiffs would have to pay for their services.

50.     Specifically, Plaintiffs are informed and believe Defendants improperly accessed, used, and plan to continue to access and use, Plaintiffs' trade secrets, including their:  clinical partners with whom Plaintiffs have developed meaningful relationships, Plaintiffs' vendor lists. Information and details regarding particular challenges and successes Plaintiffs have had with various healthcare industries, Plaintiffs' approaches to navigating the ever-increasingly-competitive clinical-selection process, student enrollment information, strategic plans to outpace creditors, Plaintiffs' assessments of its own strengths and weaknesses and their assessment if various clinical programs.

51.     Plaintiffs are informed and believe Defendants used Plaintiffs' institutional knowledge to radically increase the price Defendants previously paid for similar third-party services.  Moreover, that Defendants, by directly targeting Plaintiffs' clinical-program partners, exponentially increased the percentage of Plaintiffs' clinical partners who began using third-party services like Pronto when they contracted with Pronto, which in turn forced Defendants to absorb a host of new expenses, including the inflated costs of Defendants' services – all of which inured to Defendants' individual and collective benefit.

52.     Plaintiffs are informed and believe that Defendants Valdivia and Medina improperly accessed Plaintiff's computer databases and made available to Defendants Ortiz and Pronto, not only Plaintiffs' confidential and proprietary information, but also the sensitive and personal information Plaintiffs' students and their families, as well as applicants and personnel entrusted to Plaintiffs.

53.     Plaintiffs are informed and believe, each of the Defendants received compensation, including percentage-based kickbacks related to the number of accounts they caused to engage Pronto for its services.  Specifically, Plaintiff is informed and alleges Defendants Valdivia and Medina, while still employed by Defendants received off-book, percentage-based kickback payments including for those healthcare institutions that signed up for Pronto's services for which Plaintiffs paid at inflated prices set by Defendants.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE COMPUTER DATA ACCESS AND FRAUD ACT**

### **(PENAL CODE, § 502)**

### *Against all Defendants*

54.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

55.     Defendants knowingly accessed and without permission used Plaintiffs' data, computers, computer systems and/or computer network in order to devise and/or execute a scheme to defraud and deceive in violation of California Penal Code, §502(c)(l).

56.     Defendants knowingly accessed and without permission took, copied, and/or used data from Plaintiffs' computers, computer systems and/or computer network in violation of California Penal Code, § 502(c)(2).

57.     Defendants knowingly and without permission used or caused to be used Plaintiffs' computer services in violation of California Penal Code, § 502(c)(3).

58.     Defendants knowingly and without permission accessed and added data to Defendants' computers, computer systems and/or computer network in violation of California Penal Code, § 502(c)(4).

59.     Defendants knowingly and without permission accessed or caused to be accessed Plaintiffs' computers, computer systems, and/or computer network in violation of California Penal Code, §502(c)(7).

60.     Plaintiffs' suffer and continue to suffer damage as a result of Defendants' violations of the California Penal Code, § 502, identified above.

61.     Defendants' conduct also caused irreparable and incalculable harm and injuries to Plaintiffs (including, but not limited to, Plaintiffs' reputation and goodwill), and, unless enjoined, will cause further irreparable and incalculable injury, for which Plaintiffs have no adequate remedy at law.

62.     Defendants willfully violated California Penal Code, § 502 in disregard and derogation of Plaintiffs' rights; moreover, Defendants carried out their actions as alleged above with oppression, fraud and malice.

63.     Pursuant to California Penal Code, § 502(e), Plaintiffs are entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorneys' fees, costs and other equitable relief.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")

### 18 U.S.C.S., §§ 1961(5), 1962(B)

### *Against all Defendants*

64.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

65.     At various times and places partially enumerated above, all Defendants did acquire and or maintain, directly or indirectly, an interest in control of a RICO enterprise of individuals and entities who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce.

66.     Plaintiffs are informed and believe in 2018, 2019, and 2020 through the present, Defendants conducted a scheme to extort money from Plaintiffs through their improper and unauthorized use of Defendants' computer systems, in violation of Penal Code, § 502, to obtain money through deceit under Penal Code, section 518, [extortion] from Plaintiffs.  Specifically, Defendants created a demand for their services by poaching Plaintiffs' established network of clinical providers and incentivizing those providers to engage Defendants services at Plaintiffs' expense.

67.     Based on their trusted relationship with Medina and Valdivia and for fear of losing relationships with clinical partners that now demand Plaintiff partner with Defendant's golden goose, Pronto, Plaintiffs paid inflated rates for Defendants purported services and built-in kick-backs.

68.     Defendants violated Penal Code, § 518 each time they poached one of Plaintiffs' clinical partners to sign up with Pronto.  Defendants knew that one act would require Plaintiffs to pay for Pronto's services (at the behest of Plaintiffs' clinical partners) for fear of losing their accounts with their clinical partners who were highly motivated to outsource the administrative burdens involved in the clinical-clearance process.  These facts were and continue to be exacerbated by the increased competition for even fewer clinical rotations available as a result of the pandemic.

69.     Defendants violated Penal Code, §484 [theft by deceit].  Specifically, instead of just stealing money outright from Plaintiffs, Defendants devised a scheme whereby they could partner with each of Plaintiffs' partners to Plaintiffs' detriment and Defendants gain.

70.     Plaintiffs are further informed and believes Defendants, each of them is engaged interstate commerce under 18 U.S.C. 1962(b) and that together they committed at two or more of the offenses listed above in a manner which has impacted interstate commerce particularly as it relates to placements of nursing students outside of California.  Moreover Plaintiffs are informed and believe Defendants calculated and premeditated intentionally to threaten Plaintiffs with prospective loss of clinical accounts, *i.e.*, a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 USC 1962(b).

### THIRD CAUSE OF ACTION

**CONSPIRACY TO ENGAGE IN A PATTERN OF RACKETEERING PURSUANT TO RICO**

**18 U.S.C. §§ 1961(5), 1862(D)**

*Against all Defendants*

71.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

72.     Plaintiffs are informed and believe that at various times and places partially enumerated above Defendants conspired to acquire and maintain an interest in a RICO enterprise that was engaged in a pattern of racketeering activity.

73.     Plaintiff is informed and believes that Defendants conspired to conduct and participate in a RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962 (c) and (d).

74.     During the past two years, Defendants jointly, and severally engaged in the commission of two or more of the predicate acts that are itemized in 18 U.S.C. §§ 1961(1)(A) and (B) and in violation of 18 U.S.C. 1962 (d)  as set forth above, and incorporated herein.

## FOURTH CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS

### (CIVIL CODE, § 3426, *ET SEQ.*)

### *Against all Defendants*

75.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

76.     At all relevant times, Plaintiffs owned and had the right to possess the Trade Secrets described in paragraphs 50, herein.

77.     Plaintiffs have taken efforts reasonable under the circumstances to maintain the secrecy of their Trade Secrets by allowing access to this information only to those who had a need to know it, storing trade secret information in a secure location accessible only to those employees with the need to have the information.

78.     The Trade Secrets are not generally known or available to the public.

79.     Plaintiffs spent tremendous time, effort and resources developing and cultivating their Trade Secrets.

80.     The Trade Secrets are of substantial economic value to Plaintiffs.

81.     Without Plaintiffs' Trade Secrets Defendants would not be able to directly appeal to Plainitffs' clinical partners with targeted information regarding Plaintiffs' strengths and weakness, nor a basis from which to drive up costs of neutral third-party services.

82.     Plaintiffs' Trade Secrets, as described herein, had not been disclosed, distributed or revealed to third parties, or the public generally.

83.     Plaintiffs on information and belief, without Plaintiffs' authorization or knowledge, Defendants Medina and Valdivia intentionally disclosed Plaintiffs' Trade Secrets to Ortiz, Pronto and others.

84.     Plaintiffs are informed and believe Defendants acts of misappropriation of Plaintiffs' Trade Secrets, include, but are not limited to:

> a)   Disclosing to competitors and third-parties information to which Medina and Valdivia were privy solely as a result of their position of trust (related to Plaintiffs' clinical programs);
>
> b)   Utilizing Plaintiffs' confidential quotations, pricing and marketing information in order to assist with a competitor's efforts to compete against Plaintiffs; and
>
> c)   Utilizing Plaintiffs' confidential student-enrollment data as well as Plaintiffs' vulnerabilities to aid competitors in competing against Plaintiffs.

85.     As a direct and proximate result of Defendants' wrongful misappropriation of Plaintiffs proprietary information and Trade Secrets, Plaintiffs have suffered actual damages in a sum to be set forth according to proof at trial.

86.     Defendants' actions were oppressive, willful and malicious.

### FIFTH CAUSE OF ACTION

**THREATENED MISAPPROPRIATION OF TRADE SECRETS**

**(CIVIL CODE, § 3426, *ET SEQ.*)**

***Against all Defendants***

87.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

88.     At all relevant times, Plaintiffs owned and had the right to possess the Trade Secrets described in paragraph 50, herein.

89.     Plaintiffs have taken efforts reasonable under the circumstances to maintain the secrecy of their Trade Secrets by allowing access to this information only to those who had a need

to know it, storing trade secret information in a secure location accessible only to those employees with the need to have the information.

90.     The Trade Secrets are not generally known or available to the public.

91.     Plaintiffs spent tremendous time, effort and resources developing and cultivating its Trade Secrets.

92.     The Trade Secrets are of substantial economic value to Plaintiffs.

93.     Defendants used their unique knowledge of Plaintiffs' clinical partners and clinical-program detail to solicit business from those partners for Defendants own gain and to Plaintiffs' financial and reputational expense.

94.     Defendants neither requested, nor received, Plaintiffs' consent to use for their own purposes disclose or use their trade secrets at any time.

95.     As a proximate result of Defendants' threatened misappropriation of Plaintiffs' Trade Secrets and confidential information, Plaintiffs have been injured, irreparably and otherwise, and are threatened with additional and ongoing injuries.

96.     Because Plaintiffs' remedy at law is inadequate, they seek temporary, preliminary and permanent injunctive relief.  Plaintiffs are threatened with losing clinical partners, competitive advantage, the value derived from its Trade Secrets and goodwill in amounts which may be impossible to determine, unless Defendants are enjoined and restrained by Court order.

97.     Defendant's threatened misappropriation has been willful.

## SIXTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

#### *Against all Defendants*

98.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

99.     Plaintiffs' clinical relationships at numerous healthcare institutions within and without California have been solid and dependable.

100.    Defendants tortuously interfered with Plaintiffs' clinical-partner relationships by intentionally making false or misleading representations and/or omissions to Plaintiffs and to

Plaintiffs' clinical partners in an attempt to create, and drive up, demand for their competing service, which inured to Defendants' benefit and Plaintiffs detriment.

101.    As a direct and proximate result of Defendants' tortious interference with prospective economic advantage, Plaintiffs have suffered and continue to suffer substantial damage.

102.    Defendants tortuously interfered with Plaintiffs prospective economic advantage willfully and maliciously with intent to injure Plaintiffs.

### SEVENTH CAUSE OF ACTION

#### FRAUD AND DECEIT - INTENTIONAL MISREPRESENTATION

##### *Against all Defendants*

103.    Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

104.    Plaintiffs are informed and believe in or around June 2018, Medina, on behalf of all Defendants, represented to Plaintiffs that several of Plaintiffs' clinical partners were now requiring their partner schools to use a third-party compliance partner in an effort to reduce the clinical partners' paperwork and staffing costs.

105.    In that same conversation, Medina identified Pronto as that third-party compliance partner with whom Plaintiffs' institutional partners had contracted to take on administration of the clinical-program-clearance.   Specifically, Medina on behalf of all Defendants misrepresented Pronto was run by a brilliant business woman, whom he identified as an Asian physician.   When Defendants made these representations to Plaintiffs, that they knew them to be false.

106.    In that context, Medina shared with the CAO his finding that Pronto would be expanding to more partners quickly, so he wanted to make sure Plaintiffs got ahead of it.

107.    The true facts were Defendants were creating the ground swell for Pronto at great expense to Plaintiffs; moreover, at all times Pronto was owned or operated by Defendants.

108.    Defendants made these representations with the intent to deceive Plaintiffs and to induce them into launching, unwittingly, Defendants' conflicting business.   Had Plaintiffs known the actual facts, Plaintiff would not have entertained the possibility of Pronto.

109.     Plaintiffs justifiably relied on Defendants', Medina and Valdivia, representations because of their position of trust and Plaintiffs' lack of knowledge regarding the existence of Pronto and Defendants' relationship to same.

110.     As a proximate result of Defendants' fraud and deceit and the facts alleged herein, Plaintiffs' incurred damages, including, but not limited to, economic and non-economic injury, including emotional distress, in an amount to be established at trial.

111.     Defendants' actions were willful, oppressive, fraudulent and malicious. Plaintiffs are therefore entitled to exemplary and punitive damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### FRAUD AND DECEIT – CONCEALMENT

### *Against all Defendants*

112.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

113.     In or around June, 2018, Defendants represented to Plaintiffs that several of Plaintiffs' clinical partners were then beginning to require their partner schools to use a third-party compliance partner in an effort to reduce the clinical partners' paperwork and staffing costs.

114.     In that same conversation, Medina identified Pronto as that third-party compliance partner with whom Plaintiffs' institutional partners had contracted to administrate the clinical-program-clearance process.  Medina, on behalf of Defendants, lead Plaintiffs to believe Pronto was run by a brilliant business woman, whom he identified as an Asian physician.  Defendants conspicuously omitted their roles as owners and operators of Pronto; moreover, that Medina and Ortiz are biological brothers and co-founded the company.  When Defendants made these representations to Plaintiffs, Defendants knew them to be false.

115.     Moreover, Defendants omitted material information from Plaintiffs, including their clear conflicts of interest vis-à-vis Pronto, that had Plaintiffs known they would not have entertained the idea of doing business with Pronto.  Further, Defendants took steps daily to conceal their relationships with Pronto.  The true facts were Defendants were creating the ground swell for

Pronto at great expense to Plaintiffs; moreover, at all times Pronto was owned or operated by Defendants.

116.    Defendants made these representations with the intent to deceive Plaintiffs and to induce them into launching, unwittingly, Defendants' conflicting business.  Had Plaintiffs known the actual facts Plaintiff would not have entertained the possibility of Pronto.

117.    Plaintiffs justifiably relied on Defendants, Medina and Valdivia's representations because of the position of trust they had within the company and their lack of knowledge regarding the existence of Pronto and through Defendants' omission regarding their relationship to same.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief against the Defendant as follows:

1.    <u>On the First and Second Causes of Action</u> – Computer Data Access Fraud Act Violation, Penal Code, § 502*, et seq.* for:

(a)    Judgment against Defendants and in favor of Plaintiffs.

(b)    Injunctive relief against Defendants;

(c)    Compensatory damages,

(d)    Damages in the amount of expenditures necessarily incurred to verify whether Plaintiffs' computer system was altered, damaged or deleted by Defendants' access.  (Penal Code, §502(e).)

(e)    Punitive or exemplary damages for Defendants' willful violations, including guilt of oppression, fraud or malice."  (Penal Code, §§ 502(e), 502(f)(4).)

(f)    Attorneys' fees (Penal Code, § 502(e)(2).)

(g)    Costs

2.    <u>On the Second and Third Causes of Action - RICO</u>, for

(a)    Declaration that Defendants, jointly and severally, have acquired and maintained, directly and indirectly, an interest in or control of a RICO enterprise or persons, entities, and of other individuals who were associated in fact, all of whom engaged in, and whose activities did effect, interstate and foreign commerce in violation of 18 U.S.C., § 1962(b).

(b)     That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from acquiring or maintaining, whether directly or indirectly, any interest or control of any RICO enterprise of persons, or other individuals associated in fact, who are engaged in, or whose activities do effect, interstate or foreign commerce.

(c)     That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing additional predicate acts in furtherance of the RICO enterprise alleged in the Second and Third Causes of Action.

(d)     That all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(b) and from all other violation(s) as applicable State and federal laws.

(e)     That judgment be entered for Plaintiffs and against Defendants for Plaintiffs' actual damages, and for any gains, profits or advantages attributable to all violations of 18 U.S.C. 1962(b), according to proof.

(f)     That all Defendants pay to Plaintiffs treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits or advantages attributable to violations of 18 U.S.C. 1962(b) according to proof.

(g)     That all Defendants pay to Plainitffs all damages sustained by Plaintiffs in consequence of Defendants' several violations of 18 U.S.C. 1962(b), according to proof.

(h)     That all Defendants pay to Plaintiffs their cost of the  lawsuit incurred herein, including but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees.

(i)     That all damages caused by all Defendants, and all gains, profits, and advantages be derived by all Defendants from their several acts of racketeering in violation of 18 U.S.C. 1962(b) and from all other violations of applicable state and federal laws, be deemed to be held in constructive trust for the benefit of Plaintiffs and their assigns.

1     (j)     That Plaintiffs shall have other and further relief as this Court deems just and

2     proper.

3     3.     On the Fourth and Fifth Causes of Action – Actual or Threatened Misappropriation

4     of Trade Secrets, for:

5     (a)     Injunctive relief against Defendant for any actual or threatened

6     misappropriation pursuant to California Civil Code, section 3426.2, including an order enjoining

7     Defendants from using or possessing Defendants' trade secrets; moreover, to provide an accounting

8     of how Plaintiffs used Defendants' trade secrets; and requiring Defendants return Plaintiffs' trade-

9     secret-protected information, documents and tangible things.

10    (b)     Damages against Defendant for Plaintiffs' actual losses and for unjust

11    enrichment.

12    (c)     Exemplary damages for willful and malicious misappropriation and

13    threatened misappropriation, pursuant to California Civil Code, section 3426.3.

14    (d)     Award of attorneys' fees to Plaintiffs pursuant to California Civil Code,

15    section 3426.4.

16    4.     On the Sixth Cause of Action – Tortious Interference with Prospective Economic

17    Advantage, for

18    (a)     General damages,

19    (b)     Specific damages,

20    (c)     Injunctive relief against Defendant;

21    (d)     Punitive damages against Defendant.

22    5.     On the Seventh and Eighth Causes of Action,

23    (a)     Seven times Plaintiff's Specific Damages

24    (b)     General Damages

25    (c)     Punitive Damages.

26    6.     And, for all causes of action:

27    (a)     Attorney's fees, litigation expenses and costs of suit;

28    (b)     Payment of interest; and,

1           (c)     Such other relief as the Court may deem proper.

2

3                        **DEMAND FOR JURY TRIAL**

4         Plaintiffs hereby demand a trial by jury on any and all claims and issues triable of right by

5 jury.

6

7 Dated: December 22, 2020           **DUANE MORRIS LLP**

8

9                        By:

10                            Keith Zakarin, Esq.

                           Meagan E. Garland, Esq.

11                          Sarah A. Gilbert, Esq.

                           **Attorneys for Plaintiffs**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Electronically FILED by Superior Court of California, County of Los Angeles on 12/23/2020 11:01 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Hernandez,Deputy Clerk

Case 2:21-cv-00698-LB Document 1-2 Filed 05/26/21 Page 26 of 33 Page ID #:32

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Keith Zakarin, Esq. (126528) Meagan E. Garland, Esq. (246735) Duane Morris, LLP, 750 B Street Suite 2900 | |

TELEPHONE NO.: 619-774-2200　　FAX NO. *(Optional):*
ATTORNEY FOR *(Name):* American Career College, Inc. and West Coast University, Inc.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS: 111 No. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Central

CASE NAME: American Career College, et. al. v. Mario Oswaldo Medina, Sr., et. al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 20STCV48985 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) [ ] **Limited** (Amount demanded is $25,000) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: Dec. 22, 2020

_____
(TYPE OR PRINT NAME)　　　　　　　　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courts.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: American Career College, et. al. v. Medina, et. al. | CASE NUMBER 20STCV48985 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: American Career College, et. al. v. Medina, et. al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☑ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: American Career College, et. al. v. Medina, et. al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: American Career College, et. al. v. Medina, et. al. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br>☑ 1. ☑ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>770 S GRAND AVE APT 3080, LOS ANGELES, CA 90017-3938 |
|---|---|

| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90017 | |
|---|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___900___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 12/22/20

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>12/22/2020<br><br>Sherri R. Carter, Executive Officer / Clerk of Court<br><br>By: _____ H. Flores-Hernandez _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>20STCV48985 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Rupert A. Byrdsong | 28 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 12/23/2020
   (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By H. Flores-Hernandez _____ , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION

The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS

All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS

Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE

A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions

Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases

Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**